IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Scott Rankin, | C/A No. 3:24-cv-4238-JFA-SVH |
| Plaintiff, | |
| v. | |
| Thomas Concrete of South Carolina, Inc., | **OPINION AND ORDER** |
| Defendant. | |

## I.     INTRODUCTION

Plaintiff Scott Rankin ("Plaintiff") sues his former employer Thomas Concrete of South Carolina, Inc. ("Defendant"), alleging federal and state law claims. (ECF No. 7). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings. Subsequently, Defendant filed a Motion for Summary Judgment as to all of Plaintiff's claims. (ECF No. 34).

After reviewing the Motion and all responsive briefing, the Magistrate Judge assigned to this action prepared a thorough Report and Recommendation ("Report"), which opines that Defendant's Motion for Summary Judgment should be granted. (ECF No. 44). The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a full recitation. *Id.*

Plaintiff filed objections to the Report, (ECF No. 47), to which Defendant filed a Reply. (ECF No. 48). Thus, this matter is ripe for review.

## II.     STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005). Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge. 28 U.S.C. § 636(b).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error

in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

### III.    DISCUSSION

As stated above, the relevant facts and standards of law on this matter are incorporated herein from the Report. (ECF No. 44). However, a brief recitation of the factual background is necessary to address Plaintiff's objections.

Plaintiff's claims include: wrongful discharge, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C.§§ 12101, *et seq*. ("ADA"); interference and retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; worker's compensation retaliation, S.C. Code Ann. § 41-1-80, and breach of contract. (ECF No. 7).

Defendant hired Plaintiff in July 2018. (ECF No. 34-2 at p. 31). Plaintiff worked there as a salesman from July 2018 until his termination on June 21, 2023. *Id.* In 2023, Plaintiff reported directly to Rob Stanvitch ("Stanvitch"). (ECF No. 34-2, p. 5). Stanvitch

reported to Joseph Bernard ("Bernard"). *Id.* In January 2023, the market slowed, and Plaintiff's performance suffered. (ECF No. 34-3, pp. 8-11). Stanvitch testified that at that time, Plaintiff failed to communicate and answer calls timely, had attendance issues, and generally lacked a plan for addressing the market. *Id.* Stanvitch was urged to put Plaintiff on a performance improvement plan ("PIP"). *Id.* However, Stanvitch testified that as Plaintiff's manager, he felt Plaintiff would respond better to a market action plan rather than a PIP. *Id.* In May 2023, Plaintiff stopped completing actions required by the market action plan, became increasingly difficult to get in touch with, and was often away from work without providing prior notice. (ECF Nos. 34-2, pp. 99-101; *see also* 34-3, pp. 12-14).

On June 9, 2023, Plaintiff injured himself exiting his car upon arrival at a jobsite in Columbia, South Carolina for an early morning concrete pour. (ECF No. 34-2, pp. 19-20). On this same day, a call was scheduled that Plaintiff missed with Stanvitch and others. *Id.* Additionally, Plaintiff missed a lunch meeting scheduled with Bernard for that afternoon.[1]

---

[1] The following text exchange occurred between Bernard and Plaintiff early that morning:



4

On Sunday, June 11, 2023, Plaintiff was seen at Garners Ferry MEDcare for complaints of pain and injury to his forearm. (ECF No. 43-3). On Wednesday June 14, 2023, Plaintiff, Stanvitch, Bernard, and Rich Jones ("Jones") had a meeting to discuss a PIP for Plaintiff. The meeting lasted approximately twenty minutes. (ECF No. 34-6). Plaintiff acted unprofessionally at this meeting, and recalls ending the conversation by "asking them to email me a copy of the PIP so I could tattoo it on my ass." (ECF No. 34-7 at 7; *see also* ECF No. 34-6). After this meeting, Bernard, Stanvitch, and Jones discussed Plaintiff's unprofessional conduct in the meeting and what the response should be. (ECF No. 34-3, p. 24). Bernard believed Plaintiff's conduct warranted termination. *Id.* at 24-25. Before Defendant could deliver the termination, Plaintiff filed a workers' compensation claim on the evening of Thursday, June 15, 2023, after Stanvitch instructed Plaintiff to contact HealthBridge.[2] (ECF Nos. 34-2, pp. 22, 37-39; 39-4 at 65:22-61). A report prepared by HealthBridge was sent to Stanvitch and Jones at 6:42 p.m. on June 15, 2023. (ECF No. 39-4 at 108-114).

Defendant had a planned vacation from Friday June 16, 2023, to Tuesday June 20, 2023. (ECF No. 34-2, p. 42). On June 21, 2023, Plaintiff had a follow-up appointment regarding an MRI he had completed the preceding Friday which revealed a partial tear in his bicep tendon. (ECF No. 39-4 at 98-99). Later that day, Defendant terminated Plaintiff. (ECF No. 34-2, p. 10). Plaintiff was told he was terminated for insubordination. *Id.*

---

[2] HealthBridge is a third-party benefits coordinator for workers' compensation used by Defendant. (ECF No. 34-1, p. 7).

The Magistrate Judge recommends that this Court grant Defendant's Motion. (ECF No. 44). In response, Plaintiff enumerated twenty separate objections. (ECF No. 47). Defendant addresses each of Plaintiff's objections in its Reply. (ECF No. 48). Although most of these objections appear to be mere disagreements with the Magistrate Judge's conclusions reinforced by a rehashing of those arguments previously presented, the Court nonetheless addresses each objection below.

Objections 1, 5 & 17

In Plaintiff's first, fifth and seventeenth objections, Plaintiff objects to the Report's finding that he failed to identify an FMLA interference violation. (ECF No. 47, p. 2, 10, 28). Plaintiff avers the Magistrate Judge erred in determining Plaintiff did not notify Defendant of his need for FMLA, and in finding that Plaintiff suffered no prejudice from Defendant's failure to comply with FMLA requirements. *Id.* at 2-5. Further, Plaintiff contends the Report misstates the record regarding Plaintiff's need for medical leave. *Id.* at 10-11. Additionally, Plaintiff asserts the Report improperly recommends dismissing Plaintiff's FMLA retaliation claim by suggesting he cannot show engagement in a protected activity or pretext. *Id.* at 28.

Defendant argues that Plaintiff's text message on June 9, 2023, to Bernard wherein he stated "[P]ull the shit out of my lower back. Did you want to catch up around lunchtime Still?" (errors in original) did not provide notice of need for FMLA leave. (ECF No. 48, p. 4). Additionally, Defendant argues that even if Plaintiff's self-report to the Nurse Case Manager on June 15, 2023, could be found sufficient to provide notice of need for FMLA,

6

Defendant still had five business days to provide notice. *Id.* Plaintiff was terminated for insubordination prior to the running of that deadline. *Id.*

To make out an FMLA interference claim, "an employee must demonstrate (1) that he is entitled to an FMLA benefit; (2) that his employer interfered with the provision of that benefit; and (3) that the interference caused harm." *Adkins v. CSX Transportation, Inc.,* 70 F.4th 785, 796 (4th Cir. 2023) (citations omitted).

The Report determined that "the undisputed record is that Plaintiff failed to give notice of need for unpaid leave, and nothing in the record supports any such need." (ECF No. 44, p. 40). Plaintiff argues, "the contention that Plaintiff did no more than relay his injury ignores the uncontroverted record evidence." (ECF No. 47, p. 3). The Undersigned disagrees. Plaintiff is correct that to invoke FMLA protection, an employee need only give notice sufficient to make the employer aware that leave may be needed—not use technical or magic words. *See e.g. Hannah P. v. Coats,* 916 F.3d 327, 345 (4th Cir. 2019) (finding a reasonable jury could conclude employee's disclosure of a medical condition and request for psychiatrist-recommended leave was sufficient to trigger employer's responsibility to inquire further about whether employee was seeking FMLA leave). Plaintiff's relaying of his injury, however, failed to provide any notice leave may be needed. Plaintiff's text message where he informed Bernard that he had injured his back expressed no indication that leave was needed. Rather, in the same message Plaintiff confirmed a lunch meeting with Bernard for later that afternoon. The record also reflects Plaintiff continued working from the date of his injury until he went on his pre-arranged family vacation.

Accordingly, this Court agrees with the Report's finding that Plaintiff failed to notify Defendant of his supposed need for FMLA leave. Further, even if this Court were to find Plaintiff had adequately notified Defendant of his need for leave prior to the June 14, 2023, PIP meeting, Plaintiff fails to identify any harm suffered from Defendant's alleged noncompliance. Plaintiff argues that if he had been properly notified of and protected by FMLA leave, the meeting where the insubordination Plaintiff was terminated for took place would not have occurred because Plaintiff would have structured his leave differently. This argument is ineffective. Plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citing *Barwick v. Celotex Corporation*, 736 F.2d 946, 963 (4th Cir.1984)). Thus, an argument that had FMLA procedures been followed, this PIP meeting would not have taken place, and therefore Plaintiff's unprofessional and insubordinate actions would not have occurred is both speculative and ineffective.

Thus, for the reasons stated herein and the Report, Plaintiff's first, fifth, and seventeenth objections are overruled.

Objection 2

For Plaintiff's second objection, he avers the Report acknowledges some facts but "effectively puts no weight in the pretext analysis relevant to all of Plaintiff's claims, instead the [Report] errs by treating Defendant's account as conclusive." (ECF No. 47, pp. 5-6). Specifically, Plaintiff contends the Report did not consider that Plaintiff: did not receive performance evaluations from Defendant; was honored with a companywide award

8

in 2020; offered evidence he had a good reputation in his field; and testimony by a co-worker of Plaintiff. *Id.* at 6. Plaintiff contends that this evidence directly contradicts any suggestion of pre-injury performance deficiencies yet were given no weight in the Report. *Id.*

In determining that the reason for Plaintiff's termination was not pretextual, the Magistrate Judge performed a thorough analysis. The Report notes that Plaintiff does not address record evidence that Bernard discussed the content of the PIP with Stanvitch prior to learning about Plaintiff's arm injury. (ECF No. 44, p. 30). Further, the Report acknowledges Plaintiff's argument about nonexistent prior discipline. *Id.* at 31. In so addressing, the Magistrate Judge noted that Plaintiff tried to simply dismiss Defendant's evidence that there were ongoing work problems in the months prior to his termination which culminated in a market action plan. *Id.* Thus, these reasons coupled with the actions of Plaintiff in the PIP meeting led to the Report's determination that the reason presented by Defendant for Plaintiff's termination was not pretextual.

Here, Plaintiff acknowledges that the Magistrate Judge cited all the apparently unconsidered facts in the Report. (ECF No. 47, pp. 5-6). In preparing this thorough 48-page report, the Magistrate Judge was not required to reiterate each fact already addressed in each portion of her analysis. Lack of a reiteration of a fact does not lead this Court to believe the facts were not considered in the analysis conducted. It is clear the Magistrate Judge performed a thorough and extensive review of the record in reaching her recommendations.

Further, even if this Court were to find the Magistrate Judge did not consider the above-listed facts in her analysis, the Court reaches the same conclusion as the Report. A companywide award received three years prior to his termination, and the apparent absence of documented performance concerns does not change the Court's conclusion. As noted in the Report, Defendant's policy states that insubordination can result in immediate termination. Plaintiff has failed to provide evidence that the reason provided for his termination—his insubordinate actions in the PIP meeting—is not the actual reason for his termination. Any prior award or good reputation does not effectively rebut Defendant's reason for termination such that it can be found pretextual.

Accordingly, Plaintiff's second objection is overruled.

Objection 3

In Plaintiff's third objection, he avers that the Report mischaracterizes the undisputed workplace injury. (ECF No. 47, p. 8). Plaintiff contends the Report's discussion of "Plaintiff's June 9, 2023, workplace injury is improperly cast in investigative terms, as though the occurrence or legitimacy of the injury were at issue." *Id.* Accordingly, Plaintiff argues the Report's "investigative portrayal serves only to misdirect attention from the legally relevant question for several of Plaintiff's claims—whether Defendant's actions following that injury were retaliatory in nature." *Id*. at 9.

The Court respects Plaintiff may find the Report's language "investigative" when discussing the workplace injury. Nonetheless the Court disagrees. The Court did not find the Magistrate Judge's discussion of Plaintiff's workplace injury investigative, nor was its

attention misdirected from the legally relevant questions. Accordingly, Plaintiff's third objection is overruled.

<u>Objection 4</u>

In Plaintiff's fourth objection, he avers the Report misconstrues evidence demonstrating Bernard's anger toward Plaintiff following the workplace injury. (ECF No. 47, p. 9). Plaintiff contends the Report improperly resolves a factual dispute regarding Bernard's feelings towards Plaintiff after the missed meeting. *Id.* Plaintiff heavily relies on sworn testimony by Croft wherein he stated that Bernard's attitude toward Plaintiff had changed after the workplace injury, and that Bernard was mad about the incident occurring on the day of a planned meeting. *Id.; see also* (ECF No. 39-1). With this testimony, Plaintiff avers there is a genuine dispute of fact regarding an inference of pretext for his termination. (ECF No. 47, p. 10).

In response to this objection, Defendant reiterates that Croft's deposition testimony conducted after his affidavit clarifies his statement made therein. (ECF No. 48, p. 8). Defendant argues "Plaintiff cannot create a question of fact by ignoring, or even disagreeing with, his witness's opinions, on matters about which Plaintiff has no personal knowledge." *Id.* at 9. The Court is inclined to agree. Croft stated in his affidavit that:

> Things changed about how Joseph Bernard viewed Scott Rankin after he missed the meeting because he was hurt at work.
>
> My opinion, based on the things that Joseph Bernard said to me, was that he was mad that Scott Rankin was injured at work and particularly that it happened on the day that Joseph Bernard

> planned to transfer Scott Rankin to under his direct
> supervision.

(ECF No. 39-1).

However, Croft then clarified this statement in his deposition:

> A: Well, I mean, I'm just telling you, I would say that he
> was pissed, but not pissed that he got hurt but pissed that he
> stood him up. All that went into it together.
>
> Q: So you would take out the part in paragraph 29 that says
> Joseph Bernard was mad that Scott Rankin was injured at
> work.
>
> A: Yeah. Nobody's going to be pissed off about him
> getting—somebody getting hurt at work. We're all humans.
> Right? Nobody wants to get hurt at work.
>
> Q: Well go back up. In paragraph 28, "Things changed
> about how Joseph Bernard viewed Scott Rankin after he
> missed the meeting because he was hurt at work."
>
> A: So let's scratch that and say, "Because he missed a
> meeting."

(ECF No. 43-1, p. 24).

This clarification of testimony does not "merely create a factual dispute regarding Bernard's motive …", (ECF No. 47, p. 10), as alleged by Plaintiff. Plaintiff cannot create a question of fact by ignoring clarifications of witnesses' opinions or disagreeing with opinions on matters about which Plaintiff has no personal knowledge. Accordingly, while the record reflects Croft clarified his statement in his affidavit, this clarification, Bernard's interpretation, and Plaintiff's interpretation, viewed in the light most favorable to Plaintiff, does not support an inference of pretext sufficient to survive summary judgment.

Accordingly, Plaintiff's fourth objection is overruled.

Objection 6

In Plaintiff's sixth objection, he avers the Report errs by sanitizing the timing and context of the PIP decision, which he alleges was a direct response to his workplace injury and need for accommodations. (ECF No. 47, pp. 11-15). In sum, Plaintiff argues that the temporal proximity between Plaintiff's PIP meeting, subsequent termination, and the date of his injury was not properly considered in the Report. *Id.* Plaintiff thus contends the Report's "analysis transforms a chain of events—triggered by an undisputed workplace injury and culminating in the issuance of a PIP less than seventy-two hours later—into a routine personnel decision devoid of context." *Id.* at 15.

As noted in the Report, absent direct evidence, courts rely on the *McDonnel-Douglas*[3] burden shifting framework for discrimination and retaliation cases brought under the ADA. Plaintiff must first establish a prima facie case of discrimination or retaliation. The burden then shifts to Defendant to provide a legitimate, nondiscriminatory/nonretaliatory reason for the adverse action. If a non-discriminatory reason is provided, the burden then shifts back to Plaintiff to prove that the proffered reason is merely a pretext for discrimination or retaliation. "'Importantly, although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact' of the intentional discrimination or retaliation 'remains at all times with the

---

[3] 411 U.S. 792 (1973).

13

employee.'" *Crews-Sanchez v. Frito-Lay, Inc*., No. 22-1831, 2024 WL 469306, at \*2 (4th Cir. Feb. 7, 2024) (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011)).

Plaintiff is correct that "suspicious timing does constitute circumstantial, or indirect, evidence to support a claim of discrimination." *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1014 (7th Cir. 1997); *see also Bowman v. Holopack Int'l Corp*., No. 3:06-1648-CMC-BM, 2007 WL 4481130, at \*15 (D.S.C. Dec. 19, 2007). An employee must however provide more than mere speculation to support an inference that a protected activity and an employer's actions are linked. *Id.* Thus, it must be established that the protected activity and the adverse action were not wholly unrelated. "While very close temporal proximity between the protected activity and the adverse action can be probative of a causal connection, [if] intervening events occur between a plaintiff's protected activity and the adverse action that have a direct bearing on the adverse employment action, the causal connection will be broken" *Nowlin v. Dodson Bros. Exterminating Co.,* No. 4:18-CV-0480-SAL-TER, 2020 WL 4607260, at \*11 (D.S.C. Feb. 6, 2020), r*eport and recommendation adopted*, No. 4:18-CV-0480-SAL, 2020 WL 2306610 (D.S.C. May 8, 2020) (citation omitted) .

This Court disagrees with Plaintiff's assertion that the Report "sanitized" the timing and context of the PIP decision. (ECF No. 47, p. 11). The Court acknowledges that all writing is open to interpretation; however, repeated judgments regarding the tone and writing style of the Magistrate Judge are not effective legal arguments. Plaintiff may be assured this Court has reviewed the record as well as the Report. It is clear from this review

that Plaintiff's injury, the PIP meeting, and Plaintiff's subsequent termination all occurred over the course of less than two weeks. This is certainly a short period of time that, if coupled with other admissible evidence supporting a finding of pretext regarding Defendant's reason for termination, could support a denial of Summary Judgment. However, temporal proximity coupled with mere speculation is not sufficient to support an inference that an activity and employer's actions are causally linked.

The record reflects that there were concerns with Plaintiff's performance which led to the implementation of the market action plan prior to his injury. The record also reflects Plaintiff did not comply with all terms of this plan. It does appear Bernard's attitude towards Plaintiff and his performance may have escalated on the day of his injury, after Plaintiff missed a scheduled meeting. Plaintiff avers this anger towards Plaintiff for missing this meeting is directly linked to his injury because it occurred on the same day he was injured. The Court is not convinced that raises an inference of pretext. Bernard's negative feelings towards Plaintiff specific to the day of his injury arose after Plaintiff missed a meeting with Bernard which Plaintiff had confirmed via text message even after his injury took place. Emails between Bernard and Stanvitch reflect that between the date of the injury and the PIP meeting they were aware Plaintiff was going to doctors' visits for his injury. (ECF No. 34-3 at 42). However, while Plaintiff avers this email bolsters his case, the Court disagrees. The record reflects there were ongoing performance concerns, and the missed meeting on June 9, 2023, was considered as one of these concerns. The evidence shows that when the meeting was missed on June 9, 2023, Bernard had no knowledge the

meeting was missed because of any injury.[4] Thus, reviewing the evidence with benefit given to Plaintiff's position, there were ongoing performance issues that were being addressed by Defendant, and Plaintiff missed a meeting with a supervisor despite providing confirmation of his attendance earlier in the day. Thus, while Plaintiff argues this PIP meeting and subsequent termination all stemmed from his workplace injury, the record does not support such a determination.

Further, even if the June 9, 2023, meeting was missed due to the injury, and all past performance issues were disregarded, there is no evidence to indicate Plaintiff's termination was because of his injury. It is well settled law in the Fourth Circuit that "[i]f [a plaintiff] was fired for misconduct [ ] he did not actually engage in, that is unfortunate, but a good-faith factual mistake is not the stuff of which Title VII violations are made." *Powell v. Biscuitville, Inc.,* C/A N0. 20-2378, 2021 WL 2434011, at *2 (4th Cir. June 15, 2021) (citation omitted). Further, the Court does not "sit as a super-personnel department, weighing the prudence of employment decisions made by the defendants." *DeJarnette v. Corning, Inc.,* 133 F.3d 293, 299 (4th Cir. 1998). There were frustrations regarding Plaintiff's performance which only seem to have worsened over time and led to a meeting where Plaintiff was unprofessional and insubordinate to his supervisors. Consequently, the record reflects Plaintiff was not terminated because of his injury.

---

[4] Plaintiff would contend the text message sent to Bernard regarding his injury earlier in that day is sufficient to charge him with knowledge of the reason for the missed meeting. The Court disagrees. In the same message where Plaintiff notified Bernard of his injury, he also confirmed their plan for later in the afternoon.

Accordingly, Plaintiff's sixth objection is dismissed.

<u>Objections 7, 8, 9 & 11</u>

Plaintiff's seventh, eighth, ninth, and eleventh objections oppose the Report's consideration of Plaintiff's conduct in the PIP meeting. Plaintiff contends the Report did not give proper weight to the circumstances regarding: the timing of the PIP meeting; facts suggesting the PIP was designed to provoke Plaintiff; Plaintiff's use of profanity in relation to that used in the construction industry; and the broader context of the PIP. (ECF No. 47, pp. 15-18). Further, Plaintiff contends the Report erred in accepting Defendant's reason for termination in regard to Plaintiff's actions at the PIP meeting. *Id.* at 20-22.

Plaintiff's objection regarding the timing of the PIP meeting has been discussed at length herein. Plaintiff's contention that the Report did not consider that the PIP was designed to provoke Plaintiff is purely speculative and tied in with the temporal proximity argument already addressed. Plaintiff's argument that Defendant assigned Plaintiff a PIP and had the meeting as a "setup designed to manufacture grounds for termination," *Id.* at 18, is unsupported by the record and insufficient to create a genuine issue of material fact. The timeline has been thoroughly discussed, and it is undisputed that Plaintiff's work injury and his subsequent termination occurred within two weeks. However, this temporal proximity coupled with speculative arguments does not warrant a finding that a reasonable juror could find Defendant's reason for terminating Plaintiff was pretextual.

Further, the Court disagrees with Plaintiff's contention the Report "mischaracterizes" Plaintiff's conduct in the PIP meeting. An audio-recording of the PIP

meeting was produced by Defendant.[5] (ECF No. 34-6). This audio-recording, along with testimony by participants of the meeting, reveals Plaintiff interrupted his superiors throughout the meeting, told them they could "tattoo the PIP on his ass," and called them "motherfuckers." *Id.* Plaintiff avers these actions are not insubordinate because use of profane language is embedded in the company's culture. However, a review of the audio-recording and Croft's testimony provides that Plaintiff's conduct went beyond that which may be expected in the "company's culture." (ECF No. 43-1, pp. 8-11 (Croft testifying that just swearing would not seem to him to be grounds for wrongful termination as that was commonplace in the workplace. However, Croft also states that he would consider calling a superior a "motherfucker" insubordinate)).

Plaintiff's conduct in the PIP meeting lends credence to Defendant's justification that Plaintiff was terminated for insubordination. The record does not support that there was selective enforcement of workplace rules, nor does it reflect the timing of Plaintiff's workplace injury was causally linked to his termination for insubordination. Accordingly, Plaintiff's seventh, eighth, ninth, and eleventh objections are overruled.

Objection 10

Plaintiff's tenth objection avers the Report erred in finding that Defendant's stated reason for termination was not pretextual. (ECF No. 47, p. 19). He further contends the Report improperly accepts testimony that salaried employees are generally placed on PIPs

---

[5]  In addition to reviewing the Report, the Undersigned has individually reviewed this audio-recording.

rather than disciplined through the progressive discipline policy without considering Plaintiff's circumstances. *Id.* at 19-20.

Plaintiff's conduct at the PIP meeting discussed herein supports Defendant's contention that Plaintiff was terminated for insubordinate conduct at that meeting. Plaintiff was not terminated for failing to notify anyone of an injury, nor does the record support he was terminated because of any disability or documented medical need. Rather, Plaintiff was terminated after telling his superiors they could "tattoo the PIP on his ass" and referring to them as "motherfuckers." The Court fails to see how the "context of his reported disabilities and documented medical needs" would undermine the Report's conclusion. Defendant's knowledge that Plaintiff suffered an injury, as discussed in more detail with Plaintiff's twelfth objection, does not absolve Plaintiff of his actions. (ECF No. 34-7, pp. 8-9 (Plaintiff texts Croft the following after leaving the PIP meeting: "If that's way they're leaning I'll just quit … I fucked up can't defend my behavior, Don't want to be worrying about getting shitcanned.")).

Accordingly, Plaintiff's tenth objection is overruled.

Objection 12

For Plaintiff's twelfth objection, he argues the Report incorrectly finds that intervening misconduct severs temporal causation. (ECF No. 47, pp. 22-24). Plaintiff avers any "'intervening conduct' cannot defeat causation when the alleged behavior arose directly from the retaliatory conditions Defendant itself created." *Id.* at 24. Stated differently, Plaintiff argues that unlike case law cited in the Report, Plaintiff's apparent

insubordinate conduct occurred as part of a sequence of events related to a protected activity, not an unrelated occasion. *Id.* at 22.

The Report states that a causal inference based on temporal proximity can be severed when the employee has engaged in intervening misconduct. (ECF No. 44, p. 39). The Report cites *Nowlin v. Dodson Bros. Exterminating Co.,* where the court found that "[i]n between the time Plaintiff sent his email on December 26, 2016, and his termination on January 12, 2017, [Employer] was informed that Plaintiff became involved in another verbal altercation with a co-worker, thus, negating any causal connection between his protected activity and adverse employment action." C/A No. 4:18-0480-SAL-TER, 2020 WL 4607260, at *11 (D.S.C. Feb. 6, 2020) *report and recommendation adopted,* C/A No. 4:18-0480-SAL, 2020 WL 2306610 (D.S.C. May 8, 2020).

Plaintiff again argues that this PIP meeting was orchestrated to provoke Plaintiff and was a direct result of his workplace injury. These arguments are speculative. When discussing the PIP at the meeting, the reasons for the PIP are for communication issues, attendance concerns, and failure to provide updates required under the market action plan. (ECF No. 34-6). Accordingly, Plaintiff is unable to distinguish his case from *Nance* by claiming his insubordinate conduct was part of a culminating scheme by Defendant rather than intervening misconduct sufficient to sever a causal inference based on temporal proximity. Plaintiff's citation to *Smith v. CSRA, Inc.,* is similarly unhelpful. 12 F.4th 396, 422 (4th Cir. 2021). In *Smith,* the issue of intervening misconduct is not the basis for the court's determination summary judgment would be inappropriate regarding the plaintiff's

retaliation claims. Rather, the *Smith* court cited that "the proffered reasons for [employee's] termination ha[d] evolved over time." *Id.* Similar circumstances are not present in this matter. Thus, this Court arrives to the same conclusion as the Report. Any causal inference that may be found because of temporal proximity between Plaintiff's termination and any protected act was severed by his intervening misconduct at the PIP meeting.

Accordingly, Plaintiff's twelfth objection is overruled.

Objection 13, 14 & 15

In Plaintiff's thirteenth, fourteenth, and fifteenth objections he argues the Report erred in finding that he did not have an actual disability, a record-of disability, or that he was not regarded as disabled. (ECF No. 47, pp. 24-25). The Report found Plaintiff did not provide evidence sufficient to show he was disabled, had a record-of disability, or that he was regarded as disabled. (ECF No. 44, p. 29). However, the Report then proceeded with its analysis, stating that "even assuming Plaintiff could otherwise establish a prima facie case—which Defendant disputes—he has also failed to prove that the legitimate reasons Defendant offered for his termination—Plaintiff's behavior in the PIP meeting—was pretext for discrimination." *Id.* at 30. Thus, the Report gave credence to Plaintiff's position and continued its analysis as if he had established a prima facie case such that he was disabled, had a record-of disability, or that he was regarded as disabled. As discussed herein, Plaintiff fails to survive summary judgment even under the assumption a prima facie case was made; thus, analysis as to whether Plaintiff was disabled under the meaning

of the ADA is unnecessary. Accordingly, objections thirteen, fourteen, and fifteen are dismissed.

<u>Objection 16</u>

For Plaintiff's sixteenth objection, in relation to his failure to accommodate claim, he contends the Report improperly concludes that Plaintiff failed to identify any evidence that he requested time off for recovery and medical care or informed anyone that he needed time off. (ECF No. 47, pp. 25-28). He avers the Report ignored "communications" from Plaintiff to Defendant in the record such as: (1) the immediate injury notification via text message from Plaintiff to Bernard; (2) Bernard's apparent lack of guidance; and (3) medical treatment documentation in the form of the Nurse Care Manager's Injury Report which was circulated to Plaintiff's supervisors and others. *Id.* at 26.

This Court determines the Magistrate Judge correctly and thoroughly considered the above "ignored" evidence in reaching her determination that Plaintiff failed to show he could not perform essential functions of his job, or that he requested an accommodation. (ECF No. 44, pp. 35-38). The Court agrees these facts present evidence that Plaintiff relayed his injury to Defendant. However, merely relaying an injury and indicating the possibility of future medical treatment while still driving to work and working every day does not create an issue of material fact as to whether an accommodation was requested. Further, while Plaintiff argues otherwise, the circumstances in *Lashley v. Spartanburg Methodist College* are not materially different from his circumstances. 66 F.4th 168, 179 (4th Cir. 2023). Similar to the plaintiff in *Lashley,* there is no evidence indicating Plaintiff

made Defendant aware of how his injuries limited his ability to work. Accordingly, even when provided notice of the injury and possible future treatment options, Defendant "was left guessing what an accommodation for [Plaintiff]" would entail. *See id.* "Before an employer's duty to provide reasonable accommodations—or even to participate in the interactive process—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice." *Id.* (citation omitted) (cleaned up).

Therefore, Plaintiff's sixteenth objection is overruled.

Objection 18

For Plaintiff's eighteenth objection, he objects to this Court's exercise of supplemental jurisdiction over the remaining state law claims—workers' compensation retaliation and breach of contract—if the federal claims are dismissed. (ECF No. 47, pp. 29-32). As stated herein, the Court adopts the Report's recommendation that the federal claims be dismissed; thus, this objection must be addressed.

When a district court dismisses federal claims, the court has authority to retain jurisdiction over the state law claims that are closely related to the original claims. 28 U.S.C. § 1367(a); *see also Ketema v. Midwest Stamping, Inc.,* 180 F. App'x 427, 428 (4th Cir. 2006). However, a district court also has the discretion to decline to exercise supplemental jurisdiction outside its original jurisdiction. 28 U.S.C. § 1367(c)(3). "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir.1995). "In exercising that discretion, the district court should consider

23

'convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy.'" *Ketama,* 180 F. App'x at 428 (quoting *Semple v. City of Moundsville*, 195 F.3d 708, 714 (4th Cir.1999)).

Here, this matter has been pending before the district court since July 31, 2024. (ECF No. 1). Further, this case has progressed through discovery and full briefing has been considered on Defendant's motion for summary judgment as to all of Plaintiff's claims. (ECF Nos. 34, 39 & 43). The Report recommends Plaintiff's workers' compensation retaliation claim be dismissed for lack of a causal connection and recommends dismissal of the breach of contract claim for failure to state a claim. (ECF No. 44, pp. 42-48). In preparing the Report as to these two claims, the Magistrate Judge considered and relied on the same evidence as the underlying ADA and FMLA claims. In considering the workers' compensation retaliation claim, the Magistrate Judge stated, "the same pretext arguments asserted above are applicable here." *Id.* at 43 (referring to pretext discussion from federal claims).

This case has been pending before the district court for over a year; discovery has been completed; and the same facts, and conduct are considered in issuing a recommendation as to these claims. Accordingly, the Magistrate Judge did not err in exercising supplemental jurisdiction over the related state law claims. Therefore, Plaintiff's eighteenth objection is overruled.

Objection 19

For his nineteenth objection, Plaintiff avers the Report incorrectly recommends dismissal of his workers' compensation claim. (ECF No. 47, pp. 32-33). This objection is largely a reassertion of prior objections to the Report's recommendation as to whether the justification offered for Plaintiff's termination was pretextual. Plaintiff avers "[t]he [Report] misstates the law by treating the timing of the [workers' compensation] claim as neutral." *Id.* at 33 (citing ECF No. 44, pp. 42-44). The Undersigned disagrees.

To the extent Plaintiff is rearguing the merits of his pretext arguments, the Court incorporates the above discussion as to this objection. Further, this Court determines the Report thoroughly and correctly states the law regarding Plaintiff's temporal proximity argument as to his workers' compensation retaliation claim. Plaintiff instituted a workers' compensation claim on the evening of June 15, 2023—days prior to his termination. However, this reliance on temporal proximity and failure to reconcile Plaintiff's intervening insubordinate conduct at the PIP meeting does not present evidence sufficient to prevent summary judgment.

Therefore, Plaintiff's nineteenth objection is dismissed.

Objection 20

For Plaintiff's twentieth and final objection, he objects to the Report's recommendation to dismiss Plaintiff's breach of contract claim. (ECF No. 47, pp. 33-35). The Magistrate Judge thoroughly and accurately states the law regarding at-will

employment and employment contracts in South Carolina. (ECF No. 44, pp. 45-47). The Report recommends Plaintiff's claim for breach of contract be dismissed because Plaintiff has failed to identify any specific and mandatory contract terms allegedly breached in the referenced handbook. *Id.* at 45. Plaintiff's objection fails to remedy this issue. Despite Plaintiff's contention that "Thomas Concrete Handbook contains mandatory language regarding progressive discipline, workplace injury reporting, workers' compensation, FMLA procedures, ADAAA protections, and anti-retaliation measures," this Court is unable to locate any specific and mandatory contract terms allegedly breached by Defendant. (ECF No. 34-2). Therefore, the Court agrees with the Magistrate Judge's recommendation that Plaintiff's breach of contract claim be dismissed for failing to adequately state a claim for breach of contract.

Accordingly, Plaintiff's twentieth objection is overruled.

## IV.     CONCLUSION

After a thorough review of the Report, the applicable law, and the record of this case, the Court finds no clear error in the Report. After a *de novo* review of each part of the Report to which Plaintiff specifically objected, the Court hereby adopts the Report and Recommendation. (ECF No. 44). For the reasons discussed above and in the Report, Defendant's Motion for Summary Judgment, (ECF No. 34), is granted.

IT IS SO ORDERED.

January 22, 2026                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                   United States District Judge